Filed 11/29/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| ROY KUMAR, | C092610 |
| Plaintiff and Appellant, | (Super. Ct. No. SC20180225) |
| v. | |
| KELLY RAMSEY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of El Dorado County, Dylan Sullivan, Judge.  Reversed.

Alling & Jillson, Ltd., and Richard J. McGuffin for Plaintiff and Appellant.

Martel Law Office and Mark Martel for Defendants and Respondents.


In this dispute over property rights, plaintiff Roy Kumar appeals the trial court's order imposing terminating and monetary sanctions under Code of Civil Procedure section 128.7.[1]  The trial court found that Kumar's first amended complaint was factually

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

1

and legally frivolous because no reasonable attorney could conclude that Kumar's claims against defendants Kelly Ramsey and Elizabeth Pintar (together, Ramsey) were timely under the applicable four-year limitations period.  (§ 128.7, subd. (b)(2), (3).)  On appeal, Kumar argues that the trial court abused its discretion by granting the motion.  Finding ample legal and factual support to conclude that Kumar made a plausible, nonfrivolous argument that the applicable statute of limitations does not bar his suit, we will reverse the trial court's order.

FACTUAL BACKGROUND

A.      *The property history and Kumar's purchase*

Kumar is the owner of real property on Dundee Circle in the City of South Lake Tahoe, California (the property).  Before Kumar's purchase in 2008, the property and related rights were the subject of numerous transactions relevant to this appeal.

The first such transaction occurred on or about October 9, 2004, when Jana Ney Walker, as seller of the property, and Monica Kohs,[2] as purchaser, entered into a residential purchase agreement and joint escrow instructions, as amended by counteroffer numbers 1 through 5.[3]  An unconditional grant deed conveying the property from Walker to Kohs was recorded on December 3, 2004.

On December 9, 2004, Walker and Kohs recorded a land coverage transfer agreement and irrevocable power of attorney, made effective as of November 29, 2004. (the 2004 agreement).  One recital in the 2004 agreement stated that, pursuant to the residential purchase agreement and joint escrow instructions, Walker had excluded from

---

[2]      Although Kohs was designated by the trial court as a respondent in this appeal, she was not a moving party on the underlying motion and is not a proper party on appeal.

[3]      This residential purchase agreement is not in the record before us.

2

the sale and conveyance 23,188 square feet of class 3 land coverage[4] appurtenant to the property (the reserved coverage). This reservation of land coverage rights is not reflected in the grant deed recorded on December 3, 2004.

The 2004 agreement memorialized the terms and conditions under which the reserved coverage could be transferred to other parcels (receiving parcels) and framed the rights transfer as a covenant running with the land with the "benefits and burdens . . . binding on Kohs, her assignees, successors and assigns, and all persons acquiring or owning any Interest" in the property. The 2004 agreement appointed Walker as Kohs's agent with limited power of attorney to sell or transfer any portion of the reserved coverage to appropriate receiving parcels designated by Walker and approved by TRPA.

On December 9, 2004, Walker and Kohs also recorded an option agreement, "as more particularly described in the October 9, 2004 Residential Purchase Agreement and Joint Escrow Instructions," which gave Kohs a one-year option to purchase 3,000 of the 23,188 square feet of Walker's reserved coverage.

On December 14, 2004, Kohs deeded the property to her trust.

Kohs soon sold the property and, on May 22, 2006, an unconditional grant deed was recorded conveying it from Kohs's trust to Thomas M. Lewis.

On March 29, 2007, Kohs and Walker recorded an amended land coverage transfer agreement and irrevocable power of attorney (the 2007 agreement). The 2007 agreement recites that on November 23, 2005, Kohs had exercised her option to purchase

---

[4] Land coverage rights consist of the right to place manmade structures such as homes, driveways, or parking lots on a certain parcel of land. These rights may, under certain circumstances, be transferred in whole or in part to other parcels, granting purchasers the ability to build structures on their properties. Applications to transfer coverage rights are reviewed by the Tahoe Regional Planning Agency (TRPA).

3,000 square feet of the reserved coverage from Walker and received a power of attorney to sell or transfer the land coverage to third parties.[5]

On June 30, 2008, Lewis lost the property to American Home Mortgage Servicing, Inc., through foreclosure.

On or about December 29, 2008, Kumar purchased the property from American Home Mortgage Servicing, Inc. A grant deed reflecting the purchase and sale was recorded on February 2, 2009. The deed contained no reservations or conditions.

Prior to purchasing the property, Kumar conducted a title search. The title search contained the recorded documents identified above. It further revealed multiple transfers of portions of the reserved coverage from Walker and Kohs to third parties between 2006 and 2007. As a result of those transfers, a TRPA tracking sheet indicated that the reserved coverage had been reduced to 6,959 square feet before Kumar purchased the property. Kumar understood that when he purchased the property, his purchase included the remaining 6,959 square feet of reserved coverage.

B.    *Communications regarding coverage rights*

In May 2009, Kumar's attorney, Gregory D. Ott, wrote a letter to the TRPA providing notice of Kumar's view that "any power Ms. Walker had to transfer coverage away from [Kumar's] property terminated with Ms. Kohs'[s] transfer of the property. In the event that the power of attorney did not terminate with Ms. Kohs'[s] transfer, it certainly terminated with a subsequent foreclosure that removed preexisting liens on the property." In September 2009, Ott wrote to the TRPA again reiterating Kumar's intent to protect his land coverage rights.

On May 24, 2010, Ott wrote to the TRPA to inform it that Kumar had recorded a revocation of power of attorney to prevent further coverage transfers. He explained that

---

[5]    The November 23, 2005 transaction was not contemporaneously recorded as a restriction on the deed.

4

Kumar "is not challenging any transfers of coverage that occurred while Ms. Walker or Ms. Kohs owned the property," but asserted Kumar's position that the 2004 and 2007 agreements and powers of attorney between Kohs and Walker were not binding on Kumar, the current owner of the property, and that he would challenge any "future efforts" to transfer coverage without his consent.

The same day, Ott sent a letter to Kohs's and Walker's attorney, informing him of Kumar's position and his desire to protect his existing coverage on the property. The letter advised Kohs and Walker of Kumar's revocation of power of attorney and further stated that "any further attempts to transfer coverage away from [the property] will be opposed vigorously to the fullest extent of the law." There was no response to this letter.

In September 2010, Ott wrote to the TRPA, requesting confirmation of the amount of class 3 coverage remaining on the property, and further requesting confirmation that the "TRPA reflects Mr. Kumar as the sole person with the ability to utilize this coverage or, in the alternative, contact me regarding what steps are necessary to confirm Mr. Kumar's ownership of this coverage so that he does not fear others transferring coverage from his parcel without his consent."

In January 2011, the TRPA sent a letter to Ott informing him that its review showed the property had 2,609 square feet of remaining class 3 coverage.[6] The letter further stated: "With regard to your request that [the] TRPA confirm Roy Kumar is the 'sole owner' of the on-site coverage, TRPA can not [*sic*] adjudicate the validity of any previous sales of the rights to coverage and the private contractual obligations that may have been created by those agreements. However, because El Dorado County records show that Mr. Kumar is the legal owner of [the property], [the] TRPA will not process future transfers of coverage from that parcel absent his consent. *Powers of attorney*

---

[6] The parties do not dispute this number, although it is not clear from the record what transactions took place to reach this amount of remaining coverage.

*executed by previous owners of [the property] will not be sufficient to demonstrate Mr. Kumar's consent and will not be used as authority to process a transfer of coverage from this parcel.*"  (Italics added.)  Ott followed up in a letter to the TRPA to confirm that Kumar would not have to prove his prior ownership of the coverage so long as he owns the property, that the property had 2,609 feet of class 3 coverage remaining, and that the remaining coverage would not be transferred without Kumar's consent so long as he owned the property.  In February 2011, the TRPA's assistant branch chief provided written confirmation, agreeing with Ott's statements.

The issue of land coverage then went dormant until November 2013, when Kohs's attorney, Robert P. Huckaby, sent a letter to the TRPA, advising it that he had reviewed the 2011 correspondence and was concerned that the January 2011 letter from the TRPA created "a cloud on [Kohs's] rights to the untransferred coverage," and demanded that the TRPA rescind the letter.  He explained Kohs's position that the 23,188 feet of class 3 coverage was excluded from the sale in 2004 and "severed" by Walker from the property.  Walker then sold most of the coverage off to third parties, leaving Kohs with the remaining 2,609 square feet, per her purchase from Walker.  Huckaby asked the TRPA to "correctly inform" Kumar and Ott that "the untransferred class 3 coverage was properly severed from the land prior to them acquiring any interest in it," leaving Kumar with the rights to only 42 square feet of unused class 3 coverage that was not reserved by Walker in 2004.

In April 2014, after Ott and Huckaby wrote to the TRPA reiterating their positions, the TRPA informed Ott and Huckaby that their dispute was "well beyond the scope of anything that [the] TRPA has the authority or jurisdiction to address, particularly in light of the fact that there is no application pending with respect to coverage on the parcel."  It further advised that "[i]n the event an application is submitted for the transfer of coverage from [the property,] TRPA staff will provide notice to [the parties]," but until such time, the "TRPA simply does not have any authority or ability to determine whether

or not there is sufficient legal basis for a particular transfer." It encouraged the parties to work together "as it is apparent that an application to transfer coverage will result in a dispute that may be avoided if the parties can discuss resolution in advance."[7] The quarrel over coverage rights then apparently went dormant again.

      C.     *Ramsey's 2016 purchase of coverage rights from Kohs*

In May 2016, a live dispute arose when Ramsey entered into a contract with Kohs to purchase 360 square feet of the 3,000 square feet of land coverage Kohs had purchased from Walker. Kumar notified Ramsey in an August 4, 2016 letter that Kohs did not own any coverage rights, and that Kohs's attempt to transfer coverage to Ramsey was illegal. He further informed Ramsey of his position orally on two occasions, stating he would take legal action if necessary if they continued with the purchase and sale. On August 25, 2016, the TRPA approved the coverage transfer and issued a permit, copying Kumar on the permit. The transfer was recorded in a deed restriction.

Shortly thereafter, Kumar appealed the TRPA's approval of the coverage transfer. On October 3, 2016, while the appeal was pending, the El Dorado County Building Department issued a permit to Ramsey to build a garage on his property, using the transferred land coverage. On October 26, 2016, the TRPA's governing board held a public hearing on Kumar's appeal and found that the coverage transfer to Ramsey was proper, thereby rejecting Kumar's appeal. Ramsey subsequently built a garage and driveway using the transferred coverage rights.

---

[7]    On October 21, 2015, the TRPA wrote a letter apparently intended for Ott but addressed to the wrong attorney at the wrong firm. The letter, which was not received by Ott, attempts to provide confirmation that the April 2014 letter superseded the January 27, 2011 letter, and that the TRPA could not make any determinations about the legal sufficiency of the powers of attorney or transfer documents related to the property until it received an application for coverage transfer.

D.      *Kumar initiates litigation*

On October 31, 2017, Kumar filed a complaint against Kohs, Ramsey, and the TRPA in the Eastern District of California, which he voluntarily dismissed without prejudice on January 8, 2018.

On November 15, 2018, Kumar filed his complaint in this action against Kohs and Ramsey.  On May 8, 2019, Ramsey's attorney, Mark Martel, informed Kumar's attorney, Richard McGuffin, that Ramsey would seek sanctions against Kumar and his attorney unless he dismissed the complaint against Ramsey.  McGuffin responded that Kumar would not dismiss the complaint, and after Martel wrote a second letter threatening sanctions, Kumar filed the operative first amended complaint on July 25, 2019.  It alleged four state law causes of action against Kohs and Ramsey for (1) quiet title; (2) cancellation of voidable instrument (2007 agreement); (3) cancellation of voidable instrument (Ramsey and Kohs's 2016 purchase agreement); and (4) declaratory relief.  It further alleged a fifth cause of action for slander of title and a sixth cause of action for intentional misrepresentation to third parties, both against Kohs.

E.      *Ramsey's motion for sanctions*

After providing notice and the proper safe harbor period, Ramsey filed a motion for dismissal and recovery of fees and costs against Kumar under section 128.7.  Ramsey argued that Kumar's claims were legally and factually frivolous because (1) they were clearly barred by applicable state statutes of limitations; (2) the Tahoe Regional Planning Compact required Kumar to file a lawsuit challenging the TRPA's denial of his appeal within 60 days, and he failed to do so; (3) Ramsey was a bona fide purchaser and thus cannot be liable to Kumar; and (4) Kumar was estopped from challenging the transfer to Ramsey.

The trial court issued a tentative ruling granting the motion to dismiss and awarding terminating and monetary sanctions, which it affirmed after a hearing.  In its ruling, the trial court reviewed the principles governing section 128.7 sanctions before

8

focusing its substantive analysis on Ramsey's statute of limitations argument, which it found dispositive.

The trial court determined that the quiet title cause of action provides the longest limitations period of four years. It reviewed the recorded documents in the chain of title, noting that when Kumar purchased the property, he was admittedly aware of the 2004 agreement, 2007 agreement, and the prior, TRPA-approved transfers of coverage rights to third parties in 2006 and 2007. It found that the recorded documents "directly dispute [Kumar's] assertion that when he received the grant deed without reference to any reserved coverage, he took title and possession of the real property free of any such reserved coverage claims." The trial court thus concluded that "the validity of [Kumar's] dominion or control over the coverage of the property was called into question by these recorded documents upon the date that [Kumar] purchased the property and assumed possession; and [Kumar] was not in exclusive and undisputed possession of the coverage on the land he claims as of the date he purchased the property in 2008."

The trial court further found that even if the recorded documents did not trigger the statute of limitations at the time of Kumar's purchase, "as early as 2009 . . . Kohs was pressing a claim to coverage of the land that [Kumar] claims was his and there was an ongoing dispute between . . . Kohs and [Kumar] from 2009, which resulted in [Kumar] not being in exclusive and undisputed possession of the claimed coverage on the land since 2009."

Based on the foregoing analysis, the trial court found that the statute of limitations on Kumar's claims against Ramsey expired either on December 28, 2012, four years after Kumar purchased the property or, at the latest, in 2013, which, according to its analysis, was four years after the dispute over ownership of the coverage between Kumar and Kohs commenced, rendering the action untimely.

The trial court went on to state: "[Ramsey] has established with the evidence presented that [Kumar's] claim that the action against [him is] not barred by the

9

applicable statute of limitations is factually frivolous as not well grounded in fact and legally frivolous as not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Any reasonable attorney would agree that the claim that the action against [Ramsey] is not barred by the applicable statute of limitations is totally and completely without merit." It then granted Ramsey's motion to dismiss the case as a sanction pursuant to section 128.7, and further imposed monetary sanctions in the amount of $28,882.29, equal to the amount of attorney fees and costs requested in Ramsey's motion.

DISCUSSION

I

*Principles Governing Section 128.7 Sanctions*

Section 128.7 applies only in limited circumstances. It "authorizes trial courts to impose sanctions to check abuses in the filing of pleadings, petitions, written notices of motions or similar papers." (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 514.) Under that authority, trial courts may issue sanctions, including monetary and terminating sanctions, against a party for filing a complaint that is legally or factually frivolous. (§ 128.7, subds. (b)-(d); *Ponce v. Wells Fargo Bank* (2018) 21 Cal.App.5th 253, 263-264.) "A claim is factually frivolous if it is 'not well grounded in fact' and is legally frivolous if it is 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' [Citation.] In either case, to obtain sanctions, the moving party must show the party's conduct in asserting the claim was objectively unreasonable. [Citation.] A claim is objectively unreasonable if 'any reasonable attorney would agree that [it] is totally and completely without merit.' [Citations.]" (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 189.)

"A court has broad discretion to impose sanctions if the moving party satisfies the elements of the sanctions statute." (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 441 (*Peake*).) Like its federal counterpart, however, rule 11 of the Federal Rules of Civil

10

Procedure (28 U.S.C.),**8** section 128.7 should be utilized only in "the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." (*Operating Engineers Pension Trust v. A-C Co.* (9th Cir. 1988) 859 F.2d 1336, 1344.) "Because our adversary system requires that attorneys and litigants be provided substantial breathing room to develop and assert factual and legal arguments, [section 128.7] sanctions should not be routinely or easily awarded even for a claim that is arguably frivolous" (*Peake, supra*, 227 Cal.App.4th at p. 448), and instead "should be 'made with restraint.' "**9** (*Ibid*.) Indeed, even if a plaintiff could not successfully defend against either demurrer or summary judgment, that alone is insufficient to support the sanction of dismissal. (*Ibid*.)

"We review a section 128.7 sanctions award under the abuse of discretion standard. [Citation.] We presume the trial court's order is correct and do not substitute our judgment for that of the trial court. [Citation.]" (*Bucur v. Ahmad, supra*, 244 Cal.App.4th at p. 190.) "The scope of discretion," however, "always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' " (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.) "Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion." (*Ibid*.)

---

**8** Section 128.7 is " 'modeled, almost word for word, on rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.). In examining the provisions of section 128.7, California courts may look to federal decisions interpreting the federal rule.' [Citations.]" (*Hart v. Avetoom* (2002) 95 Cal.App.4th 410, 413.)

**9** Section 128.7 " 'must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously. Forceful representation often requires that an attorney attempt to read a case or an agreement in an innovative though sensible way.' " (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167-168, quoting *Operating Engineers Pension Trust v. A-C Co., supra*, 859 F.2d at p. 1344.)

A.    *Analysis*

Kumar argues the trial court abused its discretion by finding that his claims are so indisputably untimely as to be frivolous.  He contends that the court not only failed to address the merits of his good faith statute of limitations argument, it also failed to provide any analysis supporting the imposition of the most severe sanction of dismissal.  Ramsey counters that the trial court correctly found Kumar's claims were untimely under the applicable limitations period, and that Kumar was aware they were untimely due to the recorded documents.  Ramsey also argues that sanctions may be awarded when a case is clearly time-barred.

Having reviewed the record and applicable case authority, and without expressing any opinion as to the merits of Ramsey's other arguments, we find ample legal and factual support to conclude that Kumar made a plausible, nonfrivolous argument that the relevant statute of limitations does not bar his quiet title claim.

1.    *Statute of limitations:  legal background*

The applicable statute of limitations for purposes of our analysis, which also is the longest possible statute of limitations on the claims pleaded, is four years, based on Kumar's cause of action for quiet title.  This is consistent with the trial court's finding and is not disputed by the parties.

The limitations period for a quiet title cause of action depends on the underlying theory of relief.  (*Muktarian v. Barmby* (1965) 63 Cal.2d 558, 560.)  Here, the four-year limitations period for cancellation of an instrument set forth in section 343 governs, as the gravamen of Kumar's complaint seeks to set aside and cancel the 2007 agreement and Ramsey's 2016 purchase.  (See *Costa Serena Owners Coalition v. Costa Serena Architectural Com.* (2009) 175 Cal.App.4th 1175, 1195.)

However, "quiet title actions have special rules for when the limitations period begins to run." (*Salazar v. Thomas* (2015) 236 Cal.App.4th 467, 477 (*Salazar*).) Specifically, "no statute of limitations runs against a plaintiff seeking to quiet title while

he is in possession of the property. [Citations.] In many instances one in possession would not know of dormant adverse claims of persons not in possession. [Citation.] Moreover, even if . . . the party in possession knows of such a potential claimant, there is no reason to put him to the expense and inconvenience of litigation until such a claim is pressed against him." (*Muktarian v. Barmby, supra*, 63 Cal.2d at pp. 560-561, fn. omitted.) Thus, "[a]n outstanding adverse claim, which amounts only to a cloud upon the title, is a continuing cause of action, and is not barred by lapse of time, until the hostile claim is asserted in some manner to jeopardize the superior title. So long as the adverse claim lies dormant and inactive the owner of the superior title may not be incommoded by it and has the privilege of allowing it to stand indefinitely. Each day's assertion of such adverse claim gives a renewed cause of action to quiet title until such action is brought." (*Secret Valley Land Co. v. Perry* (1921) 187 Cal. 420, 426-427.)

Still, possession does not provide a plaintiff with an unlimited tolling period without qualification. Rather, the statute of limitations commences on a quiet title claim when the plaintiff is no longer in "undisturbed possession" of the land. (*Mayer v. L&B Real Estate* (2008) 43 Cal.4th 1231, 1238.) To determine whether a disturbance has arisen, courts consider the following questions: "(1) when were plaintiffs no longer owners 'in exclusive and undisputed possession' of the land [citation]; (2) when was defendants' adverse 'claim . . . pressed against' plaintiffs [citation]; or (3) when was defendants' hostile claim 'asserted in some manner to jeopardize the superior title' held by plaintiffs [citation]." (*Salazar, supra*, 236 Cal.App.4th at p. 478.)

2. *Kumar's statute of limitations argument*

i. *Kumar's knowledge of the recorded documents prior to purchase*

When the grant deed conveying the property to Kumar was recorded on February 2, 2009, Kumar was admittedly aware of the 2004 and 2007 agreements, as well as certain TRPA-approved transfers of portions of the reserved coverage to third parties.

13

The trial court found that Kumar's knowledge of these documents alone rendered him in disputed possession of the land from the date of purchase, which triggered the statute of limitations. It concluded that any assertions to the contrary were totally and completely without merit. Neither substantial evidence in the record nor governing legal authority support the trial court's finding of frivolity.

Relying on his unconditional grant deed obtained after foreclosure, Kumar asserts that he purchased the property "with no exceptions, reservations, or limitations to the fee." Kumar attests that prior to purchasing the property, his real estate agent sent him the TRPA tracking sheet, which Kumar understood to "show[ ] the amount of coverage belonging to the Property as of December 17, 2007." As a result, Kumar believed he purchased the property free from restrictions and "owned all remaining coverage on the property." Through his purchase, Kumar obtained physical possession of the land. There is no evidence that Kohs, Walker, or any other individual communicated with Kumar to claim the reserved coverage rights at the time of his purchase or otherwise actively threatened his title to the property.

Accordingly, Kumar supported his claim that (1) he purchased the property via grant deed without restriction; (2) he obtained possession of the property with notice of Kohs's latent claim to coverage rights through the recorded agreements; and (3) the recorded documents could constitute only an inchoate threat to his superior title that did not disturb his possession. Even if Kumar ultimately is proven wrong on the merits, a reasonable attorney advocating for him could fairly argue that his physical possession of the land and mere knowledge of the coverage rights potentially arising from the 2004 and 2007 agreements were insufficient to trigger the statute of limitations given arguable

14

legal infirmities in the documents,[10] and the timing and form of their recording.[11] (*Huang v. Wells Fargo Bank, N.A.* (2020) 48 Cal.App.5th 431, 438 ["The cases are uniform in holding that more than a threat to one's title is required to commence the running of the limitations period against an owner in possession"].)  Kumar's position therefore cannot reasonably be construed as frivolous.

ii.       *The parties' disputes beginning in 2009*

The trial court alternatively found that the limitations period was triggered in 2009, when Kumar began corresponding about ownership of the reserved coverage.  The trial court did not explain why the arguments that Kumar advanced were objectively unreasonable.  In fact, the evidence from Kumar's 2008 purchase until the 2016 coverage transfer, as well as the applicable law, plausibly support Kumar's position that during this time period, he remained in undisturbed possession of the land.

In 2009 and 2010, Kumar retained counsel and informed the TRPA that he believed the 2007 agreement was invalid as to him and would challenge any *future* attempts to transfer coverage rights from the property.  In 2010, Kumar recorded a revocation of the 2007 power of attorney.  And in January 2011, the TRPA confirmed that Kumar had 2,609 square feet of coverage rights that it would not transfer without his consent, and that powers of attorney executed by previous owners of the property were insufficient to establish consent.  Kumar reasonably asserts that he did not perceive any

---

**10**     Although Ramsey asserts (and the trial court seemed to accept) that coverage may be "severed" from the land and administered independently of the sending parcel after an ownership change, no authority is cited for this proposition and the TRPA expressly declined to weigh in on the question.

**11**     As Kumar notes, the 2007 agreement was recorded *after* Kohs sold the property to Lewis.  And while the contract recites that Kohs exercised her option in 2005 during her option period, the only evidence of that transaction in the record is an undated "Land Coverage Purchase Receipt" that Ramsey's attorney "is informed and believe[s]" "was filed together with the [2007 agreement]."

threat to his coverage rights during that time, and absent Kohs trying to sell coverage rights, he believed his title was not in legal jeopardy.

Moreover, from 2009 to 2013, Kumar's communications regarding the coverage rights occurred solely between Kumar's counsel and the TRPA.[12]  Contrary to the trial court's finding, Kohs was *not* "pressing a claim to coverage of the land" in 2009.  In fact, the first documented communication from Kohs's attorney to the TRPA advising the TRPA that Kohs disputed Kumar's (and the TRPA's) position regarding coverage rights came in November 2013.  This prompted an exchange of letters among the parties' attorneys and the TRPA, in which they stated their various positions.  However, during these exchanges, Kohs made no attempt to sell coverage rights.  And in April 2014, when the TRPA backtracked from its January 2011 position regarding Kumar's rights to the coverage, it explained it had no ability to resolve any coverage dispute because there was no pending application for transfer of coverage rights.  This correspondence could reasonably support Kumar's position that while the parties were at this time aware of their competing claims to coverage rights, Kumar remained in undisturbed possession of the property.  Thus, from Kumar's standpoint, the expense of litigation was unnecessary, as Kohs arguably had not pressed a hostile claim against the property in a way that jeopardized Kumar's superior title or his exclusive and undisturbed possession of the property.

Kumar's position that the statute of limitations did not run during this time is supported by case authority addressing specific scenarios in which a plaintiff may no longer be in "undisturbed possession" of the property.  Appellate courts have held that a notice of default (*Salazar, supra*, 236 Cal.App.4th at p. 481), and a notice of trustee's

---

[12]    The only exception was a May 24, 2010 letter that Kumar's attorney sent to Walker informing her of Kumar's legal position and advising of the revocation of power of attorney he had recorded.  No response to this letter appears in the record.

16

sale followed by a postponed sale (*Huang v. Wells Fargo Bank, N.A., supra*, 48 Cal.App.5th 431), were insufficient to dispute or disturb the property owners' possession and trigger the statute of limitations. Further, in *Mayer v. L&B Real Estate, supra*, 43 Cal.4th 1231, our Supreme Court held that although a defective notice of tax sale did not disturb possession, a subsequent letter from the tax collector notifying the owners that the property had been sold at public auction was sufficient. (*Id.* at p. 1240.) While these cases are not wholly analogous to the case at hand, they provide support to Kumar's argument that the recorded documents, which his counsel found were legally invalid, posed only a dormant threat to his title, tolling the statute of limitations until Kohs's attempted sale of coverage rights to Ramsey.

### iii. *Abuse of discretion*

As noted above, " '[a]n abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. [Citations.] This standard of review affords considerable deference to the trial court provided that the court acted in accordance with the governing rules of law. . . .' [¶] An abuse of discretion also occurs if the court applies an erroneous legal standard or its factual findings are not supported by substantial evidence." (*Kerner v. Superior Court* (2012) 206 Cal.App.4th 84, 110.)

To avoid sanctions under section 128.7, "the issue is not merely whether the party would prevail on the underlying factual or legal argument," but rather whether any reasonable attorney would agree that the claim is totally and completely without merit. (*Peake, supra*, 227 Cal.App.4th at p. 448.) Hence, the evidentiary burden to escape sanctions under section 128.7 is light. Kumar must make a sufficient evidentiary showing to demonstrate that he made a reasonable inquiry into the facts and entertained a good faith belief in the merits of the claim. Kumar need not amass even enough evidence to create a triable issue of fact as would be required if Ramsey had brought a motion for summary judgment, or allege a valid cause of action, as required to overcome a demurrer.

17

(*Peake*, at p. 448.)  Here, however, the trial court effectively required that Kumar make not only a *reasonable* argument to prevail, but a *successful* one.  In doing so, the trial court elevated the burden of proof without addressing why the legal and evidentiary support for Kumar's claims and defenses outlined above was insufficient to surmount the relatively low bar of section 128.7.

Having reviewed the record and Kumar's statute of limitations argument, and as discussed at length *ante,* we find his position on this issue well-grounded in fact and warranted by existing law, such that it is not wholly without merit.  For this reason, and because the trial court's order as it relates to when Kohs first "pressed her claim" against Kumar is unsupported by substantial evidence, we find that the court transgressed the confines of section 128.7 and its order of dismissal and imposition of monetary sanctions were an abuse of discretion.[13]

C.      *Alternative grounds*

Ramsey argues that even if we do not affirm the trial court's ruling on statute of limitations grounds, we should affirm the ruling on the alternative grounds argued in the underlying sanctions motions, and specifically find that sanctions were warranted because (1) Kumar did not comply with the TRPA's 60-day deadline to challenge the denial of his appeal, and/or (2) Ramsey was a good faith purchaser and is immune from suit.  We will decline this invitation.

---

[13]      We note that to determine whether the trial court abused its discretion, we need not resolve the merits of Kumar's underlying claim to land coverage rights.  This is because the trial court dismissed the action solely because Kumar's *statute of limitations* argument was factually and legally frivolous, not because Kumar's claim to the coverage rights was frivolous.  (§ 128.7, subd. (e) ["When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this section and explain the basis for the sanction imposed"].)  Thus, even if it is ultimately found that Kohs owns the coverage rights, Kumar still made a reasonable argument that *notice alone* of Kohs's claim to those rights did not trigger the statute of limitations.

Because the trial court rested its decision on only one ground, we cannot say how it might have exercised its discretion had it considered these alternate grounds. (See *People v. Best* (2020) 49 Cal.App.5th 747, 762-763 [declining to uphold the trial court's discretionary ruling on an alternative ground not relied on by the trial court]; *Cramer v. Morrison* (1979) 88 Cal.App.3d 873, 887.) We therefore cannot say whether Kumar's arguments in response were frivolous, and if the sanctions motion could have been properly granted on those grounds.

## II

### *Ramsey's Motion for Sanctions*

In connection with this appeal, Ramsey filed a motion for sanctions seeking $40,000 in attorney fees from Kumar and his attorneys on the ground that Kumar's appeal, and the arguments contained therein, are frivolous. (Cal. Rules of Court, rule 8.276(a)(1).) Kumar has prevailed on appeal. The motion is denied.

## DISPOSITION

The trial court's sanctions order is reversed. Kumar is entitled to his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


      KRAUSE      , J.


We concur:


      HULL      , Acting P. J.


      ROBIE      , J.